UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

MARK L. JAMES,

                Plaintiff,

        v.

COUNTY OF BENTON et al.,

                Defendants.

No. CV-05-5041-FVS

ORDER RE:  SUMMARY JUDGMENT

**BEFORE THE COURT** is Plaintiff's Motion for Summary Judgment (Ct. Rec. 14) and Defendants' Motion for Summary Judgment and Dismissal (Ct. Rec. 16).  The Court heard oral argument on February 28, 2006. Plaintiff was represented by Douglas Phelps and Defendants were represented by Rea Culwell.

**I.    BACKGROUND**

Deputy Carlos Trevino and Deputy Chris Fitzpatrick ("Defendant Deputies") are employed by the Benton County Sheriff Department. Early on the morning of June 22, 2003, Deputy Trevino was on patrol and heard a male and female arguing outside the Palm Tavern in Benton City, Washington.  The male and female were walking away from the tavern while they argued loudly.  Deputy Trevino, investigating the incident, approached the couple with his emergency lights activated and stopped his car at the curb near the couple.  The female stopped walking and the male, later identified as Plaintiff Mark James, walked away from the female toward the patrol vehicle.  Deputy Trevino observed the Plaintiff, who appeared to be angry, walking "briskly"

ORDER RE: SUMMARY JUDGMENT - 1

toward him.  As the Plaintiff got closer, Deputy Trevino ordered the Plaintiff to stop.  Plaintiff heard Deputy Trevino yell, but contends he could not hear what the deputy was yelling.  Plaintiff continued walking with his hands raised toward Deputy Trevino.  According to Plaintiff, he was asking the deputy "what" as he continued to walk closer.  However, Deputy Trevino testified during his deposition that Plaintiff never said anything and just continued to walk.  Deputy Trevino held his arm outstretched in front of him with his palm facing the Plaintiff and again ordered him to stop.  Plaintiff did not comply initially, but then he stopped.  Deputy Trevino told the Plaintiff to get down on the ground, but the Plaintiff did not respond.  During this time, Deputy Fitzpatrick arrived and exited his vehicle.  Deputy Trevino again ordered Plaintiff to "get down" but Plaintiff did not comply.  After Plaintiff continued to disobey Deputy Trevino's commands to get down, Deputy Fitzpatrick and Deputy Trevino grabbed the Plaintiff by his upper body and took him down to the ground on his stomach.  Plaintiff resisted by tensing his arms and not placing his hands behind his back as directed.  Eventually the Plaintiff relaxed and he was handcuffed, placed in the back of Deputy Trevino's patrol car and read his *Miranda* rights.  Deputy Fitzpatrick spoke with the female in further investigation of the argument observed by Deputy Trevino.  The female confirmed she had not been physically assaulted and appeared not to be in fear of Plaintiff.  Deputy Trevino issued Plaintiff a citation for Obstruction of a Law Enforcement Officer in violation of RCW 9A.76.020, and he was released.

On January 13, 2005, Plaintiff Mark James filed his Complaint in

ORDER RE: SUMMARY JUDGMENT - 2

Yakima County Superior Court against Benton County, Benton County Sheriff Larry Taylor, Deputy Chris Fitzpatrick, Deputy Carlos Trevino, and Jone [sic] Doe 1-10 and Jane Doe 1-10.  On April 15, 2005, Defendants removed this action to federal court.  Plaintiff's Complaint alleges the following:  (1) claims under 42 U.S.C. § 1983 against the individual deputies for illegal search and seizure, false imprisonment, and excessive force; (2) claims under § 1983 against Benton County and Sheriff Taylor for negligent hiring, supervision and training of the individual deputies and John Does 1-10; (3) claims against the individual deputies and John Does 1-10 for negligence; (4) claims against Benton County and Sheriff Taylor under a theory of respondeat superior; and (5) claims under Washington state law against Benton County for failure to take protective action and against the individual deputies for assault and battery.  *See* Complaint, ¶¶ 2.1 - 2.13.

Defendants filed a motion to dismiss, or in the alternative, motion for summary judgment, seeking dismissal of all claims and all parties.  Plaintiff did not respond to Defendants' motion, but Plaintiff filed a separate motion requesting summary judgment against Benton County and Sheriff Taylor on Plaintiff's claims of negligent supervision and training.

## II.  DISCUSSION

### A.  *Sheriff Taylor*

Plaintiff's Complaint only names a claim against Sheriff Taylor in his official capacity.  Thus, Plaintiff must look to Benton County for damages and this suit must be treated as an action against Benton

ORDER RE: SUMMARY JUDGMENT - 3

County.  *See Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). Accordingly, Defendants' motion to dismiss Sheriff Taylor as a party from this action is granted.

### B.  *Respondeat Superior*

Defendants' motion for summary judgment dismissal of Plaintiff's claims against Benton County and Sheriff Taylor for negligence under a theory of respondeat superior is granted because neither party can be held liable under § 1983 on the basis of respondeat superior.  *Hansen v. Black*, 885 F.2d 642, 645-46 (9th Cir. 1989) (holding no respondeat superior liability for supervisors under § 1983).

### C.  *Failure to Train & Supervise*

Under certain circumstances, a municipality may be held liable under § 1983 for an inadequacy of police training.  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989) (hereinafter "*Canton*").  In *Merritt v. County of Los Angeles*, 875 F.2d 765 (9th Cir. 1989), the Ninth Circuit articulated a three-part test for assessing municipal liability under § 1983 in failure to train cases.  First, Plaintiff must establish that Benton County's existing training program is inadequate.  "The adequacy of a particular training program must be resolved in relation to the tasks the particular officers must perform.  A training program will be deemed adequate if it enables officers to respond properly to the usual and recurring situations with which they must deal."  *Merritt*,

ORDER RE: SUMMARY JUDGMENT - 4

875 F.2d at 770 (internal quotations and citations omitted).  Second, "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."  *Canton*, 489 U.S. at 388, 109 S.Ct. at 1204.  This heightened degree of culpability may be shown where "the need for more or different training is so obvious and the inadequacy so likely to result in violation of constitutional rights, that the policy makers can reasonably be said to have been deliberately indifferent to the need.... [I]n that event, the failure to train may fairly be said to represent a policy for which the city is responsible and for which the city may be held responsible if it actually causes injury."  *Canton*, 489 U.S. at 390, 109 S.Ct. at 1205.  Finally, Plaintiffs must show the inadequate training that manifests deliberate indifference by the City "actually caused" the constitutional deprivation at issue.  *Merritt*, 875 F.2d at 770 (citing *Canton*, 489 U.S. at 391, 109 S.Ct. at 1207).

Here, Plaintiff argues Benton County and Sheriff Taylor failed to properly train the individual deputies about disabilities and domestic violence and that this lack of training caused the officers to wrongfully seize, assault, and injure the Plaintiff.  To succeed on this cause of action, Plaintiff must show the need to train the officers on disabilities and domestic violence was so obvious and the failure to provide additional or specific training in these areas was so egregious that it rose to the level of deliberate indifference.  It will not suffice to show that an injury or accident could have been avoided "if an officer had better or more training, sufficient to

ORDER RE: SUMMARY JUDGMENT - 5

equip him to avoid the particular injury-causing conduct.  Such a claim could be made about almost any encounter resulting in injury...."  *Canton*, 489 U.S. at 391, 109 S.Ct. at 1206. "[A]dequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable."  *Id.*

As proof that the deputies did not have any training in domestic violence, Plaintiff cites to the training records that were previously stricken from the record as hearsay.  As proof that the deputies were not adequately trained according to the ADA (Americans with Disabilities Act), Plaintiff points only to the deputies' deposition testimony stating that they can't remember receiving specific training in how to detect persons with disabilities or how to deal with persons who are hearing impaired.  However, Plaintiff has produced no evidence showing the alleged inadequacy of the City's training was the result of a "deliberate" or "conscious" choice, which, under *Canton*, is necessary to establish a municipal policy.  Absent such evidence, any shortcomings in the training can only be classified as negligence on the part of Benton County.  Plaintiff's argument that his injuries could have been avoided if the deputies had received "more or better training," is inadequate under *Canton*.  Since the Court determines Plaintiff has failed to submit sufficient evidence showing Benton County exhibited "deliberate indifference" in the training of its officers in domestic violence and disabilities, it is not necessary to consider the first and third prong of the *Merritt* test, i.e., the adequacy of the existing training program and whether the alleged

ORDER RE: SUMMARY JUDGMENT - 6

inadequate training actually "caused" the Constitutional deprivations at issue.  However, the Court notes that Plaintiff has not submitted any evidence showing the alleged inadequate training caused Plaintiff's alleged constitutional deprivation.  Accordingly, the Court denies Plaintiff's motion for summary judgment with respect to his failure to train and supervise claims under § 1983 against Benton County, and grants Defendants' motion for summary judgment dismissal of these claims.

### D. *Qualified Immunity*

"Qualified immunity is an entitlement not to stand trial or face the burdens of litigation." *Saucier v. Katz*, 533 U.S. 194, 200, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001) (citations and internal quotations omitted).  The Supreme Court has established a two-part analysis for determining whether qualified immunity is appropriate in a suit against an officer.  When confronted with a claim of qualified immunity, the Court must first ask the threshold question:  "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a plaintiff's constitutional right?"  *Saucier*, 533 U.S. at 201, 121 S.Ct. at 2156. If "no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."  *Id.*  On the other hand, if a violation of a constitutional right could be made on a favorable view of the plaintiff's allegations, the next question the Court must ask is "whether the right was clearly established.  This inquiry ... must be undertaken in light of the specific context of the case, not as a

ORDER RE: SUMMARY JUDGMENT - 7

broad general proposition." *Id.* As to this second inquiry, "[i]f the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Saucier*, 533 U.S. at 202, 121 S.Ct. at 2156-57. Here, Plaintiff alleges the defendant deputies violated his right to be free from unlawful search and seizure, false imprisonment and excessive force.

       1.  <u>Seizure</u>

The Fourth Amendment protects the Plaintiff from unreasonable seizures. A warrantless arrest must be supported by probable cause. *United States v. Garza*, 980 F.2d 546, 549 (9th Cir. 1992); *see also* RCWA 10.31.100 (stating that "a police officer may arrest a person without a warrant for committing a misdemeanor or gross misdemeanor only when the offense is committed in the presence of the officer"). "Probable cause exists, when under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that the defendant had committed a crime." *Id.* at 550 (citation and internal quotations omitted). Here, Plaintiff was arrested for obstruction of justice in violation of RCW 9A.76.020, which states that a "person is guilty of obstructing a law enforcement officer if the person willfully hinders, delays, or obstructs any law enforcement officer in the discharge of his or her official powers or duties." RCW 9A.76.020. Refusal to obey an officer's order provides the basis to arrest for this crime. *See e.g., State v. Little*, 116 Wash.2d 488, 497, 806 P.2d 749 (1991) (holding defendant's refusal to stop when requested by police during

ORDER RE: SUMMARY JUDGMENT - 8

lawful investigatory stop hindered investigation and constituted probable cause to arrest for obstruction of justice).

In this case, Plaintiff's failure to comply with Deputy Trevino's requests constituted probable cause to arrest him for obstructing a law enforcement officer in violation of RCW 9A.76.020.  A citizen must comply with an officer discharging lawful official duties.  *See* RCW 9A.76.020.  Thus, Plaintiff obstructed Deputy Trevino when Plaintiff failed to follow Deputy Trevino's commands and continued to come toward Deputy Trevino with his hands up in the air.  *See e.g., State v. Contreras*, 92 Wash. App. 307, 966 P.2d 915 (Div. 2, 1998) (holding warrantless arrest for obstruction of justice valid where defendant disobeyed officer's commands to raise his hands and get out of the car and refused to speak to the officers).  The Court concludes the Defendant Deputies had probable cause to arrest Plaintiff.  Therefore, the Defendant Deputies did not violate Plaintiff's right under the Fourth Amendment to be free from unreasonable seizures.

    2.    <u>False Imprisonment</u>

The existence of probable cause is a complete defense to an action for false arrest or false imprisonment.  *McBride v. Walla Walla County*, 95 Wash. App. 33, 38, 975 P.2d 1029, 1032 (Div. 3, 1999) (citing *Hanson v. City of Snohomish*, 121 Wash.2d 552, 564-64, 852 P.2d 295 (1993)).  Since the Court determines the Defendant Deputies had probable cause to arrest Plaintiff, his claim for false imprisonment fails.

    3.    <u>Excessive Force</u>

An arrest is a seizure that is governed by the reasonableness

ORDER RE: SUMMARY JUDGMENT - 9

standard of the Fourth Amendment. *Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991). In determining whether the degree of force is reasonable under the Fourth Amendment, the Court carefully balances the nature and quality of the intrusion against the governmental interest at stake. *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989). The inquiry is whether the Defendant Deputies' use of force was "objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intention or motivation." *Id.* at 397, 109 S.Ct. at 1872 (citations and internal quotations omitted). Whether the force used was objectively reasonable "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396, 109 S.Ct. at 1872 (citation omitted). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation." *Id.* at 396-97, 109 S.Ct. at 1872.

In the instant matter, Plaintiff claims the force was excessive because he suffered scrapes and bruises to his body and subsequent headaches. However, it is undisputed that Plaintiff continued to walk toward Deputy Trevino with his arms raised and failed to obey Deputy Trevino's repeated orders to stop. Deputy Trevino testified he feared for his safety when Plaintiff, who appeared to be angry, refused to obey the deputy's commands and continued to come toward the deputy. Further, both Defendant Deputies testified that Plaintiff actively

ORDER RE: SUMMARY JUDGMENT - 10

resisted arrest once the Defendant Deputies initially made contact.

Under these circumstance the Court concludes the Defendant Deputies used reasonable force against Plaintiff because they did not know what level of risk the Plaintiff posed until he was arrested and handcuffed and the matter was further investigated.  The Defendant Deputies' use of force was brief and appropriate to secure the Plaintiff, to ensure that no criminal activity was afoot, and to preserve the safety of both the Plaintiff, the deputies and the public.  The facts, viewed in the light most favorable to the Plaintiff, do not establish that the Defendant Deputies' conduct violated Plaintiff's constitutional rights.  Thus, the qualified immunity inquiry ends here and Plaintiff's § 1983 claims against the Defendant Deputies are dismissed.

### E.    State Law Claims for Assault and Battery

Plaintiff's Complaint asserts claims against the Defendant Deputies under Washington state law for assault and battery.  A battery is a "harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact, or apprehension of imminent contact." *McKinney v. City of Tukwila*, 103 Wash. App. 391, 408, 13 P.3d 631, 641 (Div. 1, 2000) (citation and quotations omitted).  "An assault is any act of such a nature that causes apprehension of a battery." *Id.*  Since the Court concludes the Defendant Deputies used reasonable force against Plaintiff, his claims for assault and battery fail because the touching was lawful.  *Id.* at 409, 13 P.3d at 641.

//

ORDER RE: SUMMARY JUDGMENT - 11

**F.    *State Law Claims for Failure to Take Protective Action***

Plaintiff also asserts a claim against Benton County for failure to take protective action.  "Under the public duty doctrine, recovery from a municipal corporation in tort is possible only where plaintiff shows that the duty breached was owed to an individual, and was not the breach of a general obligation owed to the public in general[.]" *Beal for Martinez v. City of Seattle*, 134 Wash.2d 769, 784, 954 P.2d 237, 244 (1998) (citations omitted).  "Liability may exist, however, where a relationship exists or has developed between the plaintiff and the municipality's agents giving rise to a duty to perform a mandated act for the benefit of a particular person or class of persons."  *Id.* at 785, 954 P.2d at 244.  "Such a special relationship arises where (1) there is direct contact or privity between the public official and the injured plaintiff which sets the latter apart from the general public, and (2) there are express assurances given by a public official, which (3) give rise to justifiable reliance on the part of the plaintiff."  *Id.* at 785, 954 P.2d at 244-45.

In the present case, Plaintiff has not alleged any fact supporting a special relationship; there was no direct contract or privity between Benton County and Plaintiff.  Further, Plaintiff has not set forth any facts that set him apart from the general public and he has not alleged any facts supporting any assurances given by Benton County.  Thus, Plaintiff has not submitted any facts that would implicate liability on Benton County for a failure to protect claim.  Therefore, the Court grants Defendants' motion for summary judgment dismissal of Plaintiff's claim for failure to take protective action.

ORDER RE: SUMMARY JUDGMENT - 12

*G.    Service of Process*

Although the Court determines it is appropriate to decide the parties' cross-motions for summary judgment on the merits, the Court notes that it appears Plaintiff failed to properly serve Benton County. RCW 4.28.080(1) requires that in actions against a county, the summons shall be served by delivering a copy to the county auditor, during normal office hours, or the deputy auditor. However, here, Plaintiff attempted to serve Benton County by hand-delivering a copy of the summons and complaint to Benton County Commissioner Claude Oliver, which was accepted by his wife Diane Oliver. This is not proper service under RCW 4.28.080(1). Accordingly,

**IT IS HEREBY ORDERED:**

1.    Plaintiff's Motion for Summary Judgment (**Ct. Rec. 14**) is **DENIED.**

2.    Defendants' Motion for Summary Judgment and Dismissal (**Ct. Rec. 16**) is **GRANTED.** For the reasons stated herein, **Sheriff Taylor** is **DISMISSED** as a party in this action and Plaintiff's claims against the remaining defendants are **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.** The District Court Executive is hereby directed to enter this Order, furnish copies to counsel, **DISMISS SHERIFF TAYLOR, ENTER JUDGMENT FOR THE DEFENDANTS,** and **CLOSE THE FILE.**

**DATED** this 9th day of March, 2006.

                    s/ Fred Van Sickle
                    Fred Van Sickle
              United States District Judge

ORDER RE: SUMMARY JUDGMENT - 13